UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

N ANCY V ARNER ,

        Plaintiff,

v.

T HE S TATE F ARM F IRE & C ASUALTY
C OMPANY ,

        Defendant.
_____/

Case No. 17-10082

S ENIOR U.S. D ISTRICT J UDGE
A RTHUR J. T ARNOW

U.S. M AGISTRATE J UDGE
S TEPHANIE D AWKINS D AVIS

**O RDER D ENYING IN P ART AND G RANTING IN P ART D EFENDANT ' S M OTION FOR
S UMMARY J UDGMENT [6]**

Plaintiff Nancy Varner filed this action in Wayne County Circuit Court on March 11, 2016 alleging claims of breach of contract (Count I) and misrepresentation and fraud (Count II) against Defendants State Farm Fire & Casualty Company ("State Farm") and C Knight Insurance Agency ("C Knight"). Defendant C Knight was dismissed on January 6, 2017. Defendant State Farm removed the case to this Court on January 11, 2017.

On April 4, 2017, Defendant filed a Motion for Summary Judgment [6]. Plaintiff filed a Response [7] on April 20, 2017. Defendant filed its Reply [8] on May 1, 2017.

A hearing was held on the Motion on December 7, 2017. Per the Court's request at the hearing, Defendant filed a Supplemental Memorandum [10] on

December 13, 2017 and Plaintiff filed a Response to the Memorandum [11] on December 17, 2017.

For the reasons stated below, Defendant's Motion for Summary Judgment is **DENIED in part** with respect to Count I and **GRANTED in part** with respect to Count II.

## FACTUAL BACKGROUND

Plaintiff has been living at 17691 Hamilton since 1978 and has been insured with Defendant since 1991. As of 2013, Plaintiff received homeowners' insurance coverage through Defendant's agent, C Knight.

In pertinent part, Section I - Additional Coverages, ¶ 11 of the applicable Insurance Policy ("Policy") provides:

> **Collapse.** We insure only for direct physical loss to property involving the sudden, entire collapse of a building or any part of a building. Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing. The collapse must be directly and immediately caused only by one of more of the following . . . (e) weight of ice, snow, sleet or rain which collects on a roof . . . .

Furthermore, Section I - Conditions, ¶ 6 of the Policy provides:

> **Suits Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage. In the event a claim is formally denied, in whole or in part, the period of time in which a suit or action may be commenced against the company is extended by the number of days between the date the notice of the loss is

provided to the company and the date the claim is formally denied.

On or about February 28, 2014,[1] while the Policy was in force, Plaintiff suffered a loss that she submits was caused by snow and ice accumulation on the roof of her home. Amend. Compl. at ¶ 13. Plaintiff alleges that the weight of the snow caused beams supporting the columns on the basement wall, exterior wall, second floor, and roof to collapse. *Id.*

Plaintiff does not recall the exact date that she discovered the damage to her home. In February 2014, Plaintiff began to notice cracks in the walls. Also in 2014, Plaintiff hired a company to repair the roof. Sometime prior to June 4, 2015, Plaintiff noticed that three sliding doors in her home were not working properly.

Plaintiff notified Defendant of the damage to her home on June 4, 2015. Plaintiff acknowledged that she alerted Defendant of the damage several months after the damage actually occurred. Plaintiff testified that she did not give Defendant immediate notice of the damage because of her husband's passing on December 14, 2013.

On July 13, 2015, Defendant's representative, David Walegna, conducted an inspection of the property. Walegna concluded that the structural damage was the

---

[1] In the Amended Complaint, Plaintiff alleges that the damage occurred on February 28, 2014. However, in her deposition, Plaintiff testified: "Just – I can't tell you how, I just picked that date . . . . I was asked to give a specific date [by C Knight]. I did not have a specific date that I could pinpoint." Pl. Dep. 37:23; 38:4-6 (Oct. 31, 2016).

"result of multiple latent construction defects individually or in concert" and there was "no proximate causal relationship between observed damages and a singular weather-related event or seasonal occurrence." [Dkt. #6-7 at 9].

On September 2, 2015, Defendant sent Plaintiff a letter stating:

> Based upon the results of our discussions, site inspection, and investigation, it was determined that damage to your home was caused by multiple latent construction defects. There is also evidence of rot in the framing of the structure due to long term exposure to water. Unfortunately damage resulting from these causes of loss are not covered by your policy.

Along with the letter, Defendant distributed $998.44 to Plaintiff for "repairs from water damage." Plaintiff submits that the total cost to repair damage to the home is $109,340.40. Proj. Cost. Est., Jan. 5, 2016. Plaintiff maintains that Defendant breached the insurance contract by failing to adequately compensate her for the loss.

## LEGAL STANDARD

Defendant moves for summary judgment under Rule 56. On such a motion, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

Defendant raises three issues in support of its Motion for Summary Judgment. First, Defendant argues that the action is barred by the one-year limitations period set forth in the Policy. Second, Defendant argues that Plaintiff failed to state a claim for misrepresentation and fraud. Finally, Defendant argues that Plaintiff is not entitled to interest under Michigan's Uniform Trade Practices Act, M.C.L. § 500.2006.

### I. Applicability of the Limitations Period

"Insurance contracts are subject to statutory regulations, and mandatory, statutory provisions from the Insurance Code must be read into the contracts when applicable." *Randolph v. State Farm Fire & Cas. Co.*, 229 Mich. App. 102, 104, 580 N.W.2d 903, 904 (1998). M.C.L. § 500.2833 regulates fire insurance policies in the State. M.C.L. § 500.2833(1)(q) requires that insurance policies contain limitations periods and tolling provisions. *See Randolph*, 229 Mich. App. at 106.

M.C.L. § 500.2833(1)(q) provides:

> That an action under the policy may be commenced only after compliance with the policy requirements. An action must be commenced within 1 year after the loss or within

> the time period specified in the policy, whichever is longer.
> The time for commencing an action is tolled from the time
> the insured notifies the insurer of the loss until the insurer
> formally denies liability.

It is undisputed that the loss occurred on February 28, 2014 and Plaintiff did not notify Defendant of the loss until June 4, 2015.

Defendant maintains that Plaintiff's suit is time-barred because she did not file this action until approximately fifteen months after the loss occurred. Defendant further maintains that Plaintiff is not entitled to tolling because she waited over one year from the date of loss to notify Defendant of the damage.

In response, Plaintiff argues that the limitations period began on the date she discovered the loss and not on the date on which the loss occurred. Plaintiff reasons that the action is timely because it was filed within one year of the date she discovered the damage.

Alternatively, Plaintiff submits that Defendant waived the statute of limitations defense by acknowledging liability, and paying the claim in part, despite being aware that the claim was untimely.

Plaintiff's first argument is without merit. The Policy plainly requires that the insured commence the action "within one year after the date of loss or damage." *See Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d 23, 26 (2005) (noting that courts "must construe and apply unambiguous contract provisions as written.").

Neither the Policy nor M.C.L. § 500.2833(1)(q) provide that the action may be commenced within one year of the insured's discovery of the loss or damage.

However, the Court's interpretation of the Policy is not fatal to Plaintiff's claim because Defendant's actions may constitute a waiver of the limitations period set forth in the Policy.

Waiver is the voluntary relinquishment of a legal right. *Adair v. Michigan*, 497 Mich. 89, 104 (2014). "In the insurance context, waiver may be established 'either from affirmative acts of the insurer or its authorized representatives, or its nonaction with knowledge of the facts.'" *Golumbia v. Prudential Ins. Co.*, 116 F.3d 1480, *3 (6th Cir. 1997) (internal citation omitted); *see also Johnston v. Manhattan Fire & Marine Ins. Co.*, 294 Mich. 550, 556, 293 N.W. 747, 750 (1940) (holding that an "insurer may waive its right to have proof of loss furnished within the time limited 'by acts and conduct manifesting an intent and purpose not to claim the supposed advantage . . . .'").

Additionally, "[p]artial payment on a debt . . . operates as . . . a waiver of any right to take advantage by plea of limitations of any such lapse of time as may have occurred previous to the payment being made." *Yeiter v. Knights of St. Casimir Aid Soc'y*, 461 Mich. 493, 607 N.W.2d 68 (2000); *see also CSX Transp., Inc. v. Benore*, 154 F. Supp. 3d 541, 554 (E.D. Mich. 2015) (acknowledging that a payment towards a debt or obligation could constitute a waiver under Michigan law).

Waiver may be shown by "declarations that manifest the parties' intent and purpose." *Reed Estate v. Reed*, 293 Mich. App. 168, 176, 810 N.W.2d 284, 290 (2011). But, a "waiver will not be found absent a showing that the party waiving his right did so intending to relinquish that right." *Dawdy v. Dykhouse*, No. 250876, 2005 WL 119823, at *2 (Mich. Ct. App. Jan. 20, 2005).

Neither party has presented the Court with authority that directly addresses the issue of whether the insurer waives the statute of limitations defense in this context. Accordingly, this appears to be an issue of first impression in Michigan. The Court holds that Defendant's "affirmative acts" of processing, investigating, and making a partial payment on Plaintiff's claim, *see Golumbia*, 116 F.3d at *3, over one year after the date of loss, may constitute a waiver of the statute of limitations defense.

Defendant is no stranger to the one-year limitations period specified in its Policy. On June 4, 2015, when Plaintiff communicated to Defendant that the loss had occurred on February 28, 2014, Defendant could have declined to investigate Plaintiff's claim because it was untimely. Defendant's decision to proceed and make a partial payment create a genuine issue of material fact as to whether it intended to waive the applicable limitations period. Accordingly, summary judgment is not warranted.

II. **Misrepresentation and Fraud**

For the reasons stated on the record, the Court grants Defendant's Motion for Summary Judgment with respect to Count II.

### III. Statutory Interest

In the Amended Complaint, Plaintiff alleged that she is entitled to 12% interest pursuant to M.C.L. § 500.2006. ¶ 18.

M.C.L. § 500.2006 provides in pertinent part:

> A person must pay on a timely basis to its insured . . . the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant 12% interest . . . on claims not paid on a timely basis . . . . [i]f benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum . . . .

The purpose of M.C.L. § 500.2006 is "to penalize insurers who fail to timely pay benefits." *Stryker Corp. v. XL Ins. Am.*, 576 F. App'x 496, 504 (6th Cir. 2014). "It applies when the insurance company is dilatory in making timely payments to the insured." *Yaldo v. N. Pointe Ins. Co.*, 457 Mich. 341, 348, 578 N.W.2d 274, 277 (1998).

Plaintiff has failed to provide any evidence to support her claim that Defendant was dilatory in carrying out its contractual obligations. Plaintiff's delay in notifying Defendant of the loss is the reason for the length of this process. Defendant promptly responded to Plaintiff's claim, conducting its inspection on July 13, 2017, and formally denying benefits on September 2, 2017. There is no dispute of as to whether Defendant acted in a timely manner. Therefore, Plaintiff's claim for statutory interest is dismissed.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [6] is **DENIED in part** and **GRANTED in part**.

**IT IS FURTHER ORDERED** that Count II is **DISMISSED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: December 21, 2017    Senior United States District Judge